UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT SOUTH BEND

| | |
|---|---|
| JOHN TILLER and JOLIE TILLER, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KEYSTONE RV COMPANY, )<br>)<br>Defendant. )<br>) | No. 3:25-CV-450-PPS-AZ |

## OPINION AND ORDER

John and Jolie Tiller purchased a Keystone RV to fulfill their dreams of cross-country family adventures. In deciding upon a Keystone RV, they say they relied on warranties Keystone marketed that promised quick and comprehensive repairs. But their dream became an apparent nightmare of continual breakdowns and repairs that derailed one family trip and forced them to cancel another. In addition to their standard breach of warranty claims, the Tillers accuse Keystone of orchestrating a deceptive scheme in which Keystone uses third party dealers to delay, deflect, and unreasonably limit the time spent on warranty repairs. Keystone moves to dismiss the Tillers' deceptive practices claims. For the reasons that follow, Keystone's motion to dismiss is granted in part and denied in part. The Tillers' Virginia law and Indiana common law fraud claims will be dismissed. They may, however, proceed on their Indiana statutory fraud claim.

**Background**

According to the Amended Complaint, which I accept as true for present purposes, on September 29, 2023, the Tillers purchased a new 2023 Keystone RV from a Camping World dealership in Thornburg, Virginia. [DE 13 at ¶41.] Camping World and Keystone jointly market Keystone RVs. [*Id.* at ¶43.] The RV had a one-year limited base warranty (the "Limited Base Warranty") issued by Keystone, which commenced "from the date of purchase by the first retail owner." [DE 17-1 at 4.] The Limited Base Warranty covers "defects in materials and workmanship supplied by and attributable to Keystone's manufacturing and assembly of the RV when the RV is used solely for its intended purpose of recreational camping." [*Id.*] The Limited Base Warranty expressly did not "extend to future performance" and warned it was "reasonable to expect" service delays. [*Id.*] Keystone also issued a separate three-year warranty that concerned different portions of the RV, such as the steel frame and sidewalls (the "Limited Structural Warranty"). [*Id.* at 5.]

The Tillers' contract established "[e]xclusive jurisdiction for deciding legal disputes relating to alleged breach of warranty . . . must be filed in the courts within the state of manufacture." [*Id.* at 7.] The Tillers believe their RV was manufactured in Indiana. [DE 13 at ¶145.] The Tillers' contract also had a choice of law provision stating that both limited warranties:

> [W]ill be interpreted and construed in accordance with the laws of the state of Indiana. Any and all claims, controversies, and causes of action arising out of or relating to the limited warranties, whether sounding in contract, tort or statute, will be governed by the laws of the state of Indiana, without giving effect to any conflict of law rule that would result in the application of the laws of a different jurisdiction.

[DE 17-1 at 7.]

The Tillers claim Keystone, in coordination with authorized dealers such as Camping World, contrived a scheme to delay and deny warranty work. The scheme is alleged to operate as follows: When consumers complain of defects with their RVs, Keystone directs them to bring their RVs for warranty repairs to authorized dealers (such as Camping World). Under this system, Keystone reimburses the authorized dealers for the repairs they perform on Keystone RVs under Keystone warranty. Keystone, however, has imposed strict, unrealistic caps on the amount of service time that it will reimburse dealers for performing these warranty repairs. Any repair time an authorized dealer spends in excess of these strict limits set by Keystone goes unreimbursed. The Tillers say this creates a system in which authorized dealers are unable to or disincentivized from making complete repairs. Layered on top of this are the Tillers' allegations that Keystone and its authorized dealers are incentivized to delay acknowledgment of and completion of repairs to run out the clock on the limited warranties for Keystone RVs.

The Tillers say they did not "fully use" their RV until 2024, and they immediately noticed numerous problems. [DE 13 at ¶¶51–52.] Throughout May and July 2024, the Tillers communicated with Camping World concerning a variety of issues with their RV's awning, dinette table, internal trim, and external paneling. [*Id.* at ¶¶53–64.] The Tillers dropped off their RV for repairs with Camping World in June and were assured the repairs would be complete before a vacation planned on July 22, 2024. [*Id.* at ¶¶56–57.] By the date of their trip, Camping World had not completed all repairs and instead

3

provided temporary fixes that would permit the Tillers to go on their trip. [*Id.* at ¶¶66–67.] The Tillers say new issues arose with their RV during the trip that forced them to end their trip early. [*Id.* at ¶¶68–73.]

Upon their return, the Tillers continued to communicate with Camping World throughout July, August, and September concerning additional repairs. [*Id.* at ¶¶77–98.] They dropped off their RV at Camping World for servicing on August 24, 2024. [*Id.* at ¶85.] The Tillers say Camping World failed to complete the repair work before their October family trip, which they were forced to cancel. [*Id.* at ¶88, 100.] In November 2024, the Tillers twice contacted Keystone directly concerning their ongoing repair issues with Camping World. [*Id.* at ¶¶110, 115.] On both occasions, Keystone gave them the bum's rush, refusing to perform repairs on the RV and directing them to Camping World instead. [*Id.* at ¶¶111, 116.] The Tillers say Camping World and Keystone provided inaccurate and misleading information about the status of repairs to the RV on several occasions. [*Id.* at ¶109.] Throughout January and March 2025, the Tillers say they worked to hire and schedule an RV inspector to review Camping World's repairs. On March 7, 2025, the Tillers' hired inspector was unable to perform a full inspection but still noticed numerous unresolved issues with the Tillers' RV. [*Id.* at ¶¶134–140.] At that point, the Tillers decided to simply leave their RV with Camping World and turn to the courts for relief. [*Id.* at ¶141; DE 1.]

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In their Amended Complaint, the Tillers allege five causes of action against Keystone: (1) breach of warranty and contract; (2) violations of the Magnuson Moss Warranty Act ("MMWA"); (3) violations of the Virginia Consumer Protection Act ("VCPA"); (4) violations of the Indiana Deceptive Consumer Sales Act ("IDCSA"); and (5) fraud and civil conspiracy to defraud under Indiana law. Keystone moves to dismiss the Tillers' third, fourth, and fifth causes of action, which I consider in order below.

I. **VCPA Claim**

The Parties dispute the enforceability of the governing law provision in their contract as it relates to the Tillers' VCPA claim. Recall that this governing law provision dictates: "[a]ny and all claims, controversies, and causes of action arising out of or relating to the limited warranties, whether sounding in contract, tort or statute, will be governed by the laws of the state of Indiana[.]" [DE 17-1 at 7.] Courts often refer to these provisions as choice of law provisions, but I refer to it as a "governing law" provision

5

here to avoid confusion with the choice of law analysis below.

When considering state law claims, courts are to apply the choice of law rules of the state in which they sit—Indiana in this case. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009); *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986). "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). In *Polansky v. Forest River, Inc.*, the court analyzed a nearly identical governing law provision that included the same "arising out of or relating to" language. CAUSE NO. 3:23cv796 DRL, 2024 WL 4785179, at *2 (N.D. Ind. Nov. 13, 2024). Applying *Allen*, the court noted such broad language meant "Indiana law governs not just a claim that arises from the warranty, but one that relates to it." *Id.*

The Tillers argue their VCPA claim is a statutory claim that does not arise from the limited warranties. They note "[a] statutory or tort claim is not necessarily controlled by the contractual choice of law analysis; a single action could contain multiple claims and apply different states' law." *Mouser v. Keystone RV Co.*, Case No. 3:20-CV-494, 2023 WL 2475234, at *4 (N.D. Ind. Mar. 13, 2023) (citing *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004)). That's true, but the cases cited by the Tillers lack a governing law provision or the governing law provision did not have the broad "arising out of or relating to" language as in *Polansky*. *See Mouser*, 2023 WL 2475234, at *3–4 (conducting choice of law analysis for each of plaintiff's claims in the absence of a governing law provision); *Beverley v. Jayco Inc.*, Case No. 3:24-CV-009-GSL-AZ, 2024 WL 3395781, at *1–2 (N.D. Ind. July 11, 2024) (applying Virginia law to VCPA claim where

6

the governing law provision concerned "disputes relating to an alleged breach of warranty or otherwise relating to your purchase or ownership of the RV").

The Tillers' VCPA claim relates to and arises out of the limited warranties. Indeed, this claim is replete with references to and relies upon the limited warranties' representations (or misrepresentations). [*See* DE 13 at ¶190.] As in *Polansky*, in their VCPA claim the Tillers allege that "[Keystone] engaged in deceptive practices when it warranted the product to have certain characteristics or a particular standard that the unit lacked." 2024 WL 4785179, at *2; *see also Orr v. Keystone RV Co.*, 736 F.Supp.3d 389, 399–400 (E.D. Va. 2024) (finding Virgina's similar choice of law rule dictated application of a governing law provision applying Indiana law thereby dismissing a VCPA claim).

*Polansky* recognized several exceptions to the application of governing law provisions in Indiana. These include situations where Indiana has no "substantial relationship" to the Parties or transaction or that application of Indiana law would be contrary to the fundamental policy of a state with a "materially greater interest" than Indiana. *See Barrow v. ATCO Mfg. Co.*, 524 N.E.2d 1313, 1314–15 (Ind. Ct. App. 1988) (citing Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971)).

Here, it is true the Tillers are residents of Virginia, purchased their RV in Virginia, and were mostly harmed in Virginia. (It appears they took their RV to Camping World locations in Virginia for warranty repairs). But equally compelling is the connection to Indiana. The RV was manufactured in Indiana, Keystone's principal place of business and residency is in Indiana, and Keystone's drafting of the contract language and marketing materials occurred in Indiana.

While notable, I find the connections to Virginia insufficient to warrant application of either of the Restatement (Second)'s exceptions to the Parties' governing law provision. In other words, I cannot find that Virginia's policy interests are "materially greater" than those of Indiana. In *Polansky* the court found neither exception applied to an Indiana governing law provision where the out of state plaintiff purchased their RV in Ohio and repairs occurred in Ohio and Pennsylvania. 2024 WL 4785179, at *2–3. The Tillers point the Court to no case in which an exception to the governing law provision succeeded on their asserted bases. Accordingly, the Parties' governing law provision controls this action, and the Tillers' VCPA claim is dismissed.

## II.   IDCSA Claim

Indiana enacted the IDCSA to "protect consumers from suppliers who commit deceptive and unconscionable sales acts[.]" Ind. Cod. § 24-5-0.5-1(b)(2). The IDCSA defines 43 types of acts as "deceptive", but it also contains a catch-all provision that broadly prohibits any "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24–5–0.5–3(a)-(b). The 43 deceptive acts described in the IDCSA are illustrative, not exhaustive. In other words, a plaintiff may seek relief under the IDCSA's general prohibition on unfair, abusive, and deceptive acts and is not required to fit their claim into one of the 43 enumerated deceptive acts. *See Gasbi, LLC v. Sanders*, 120 N.E.3d 614, 619–20 (Ind. Ct. App. 2019).

The IDCSA further categorizes deceptive acts as either "uncured" or "incurable." *See Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 647 (Ind. Ct. App. 2004). These two awkwardly named categories of deceptive act differ in their elements and pleading

8

standards. On the one hand, an "uncured" deceptive act requires a consumer to provide notice under Ind. Code § 24–5–0.5–5 and the supplier to either fail to offer to cure within 30 days of that notice or fail to cure within a reasonable time after the consumer accepts the offer to cure. *See* Ind. Code § 24–5–0.5–2(7). On the other hand, an "incurable" deceptive act is "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24–5–0.5–2(8); *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998) (noting "[i]ntent to defraud is . . . an element of an incurable deceptive act"). Accordingly, Rule 9(b)'s heightened pleading standard applies to allegations of "incurable" deceptive acts under the IDCSA. *Shea v. Gen. Motors LLC*, 567 F.Supp.3d 1011, 1024 (N.D. Ind. 2021).

In their Amended Complaint, the Tillers allege Keystone committed "uncured" deceptive acts. [DE 13 at ¶207.] They allege Keystone committed several enumerated types of deceptive acts and appear to allege a violation of the IDCSA's catch-all provision. [*Id.* at ¶¶207–08.] In their response, the Tillers recast their Amended Complaint as alleging Keystone committed *incurable* deceptive acts, [DE 18 at 18], but their Amended Complaint contains no such allegations. Thus, I will consider the Tillers' IDCSA claim solely in the context of alleging uncured deceptive acts. *See McKally v. Perez*, 87 F.Supp.3d 1310, 1317 (S.D. Fla. 2015) ("[A] complaint may not be amended by briefs in opposition to a motion to dismiss.").

Keystone's chief complaint is that the Tillers did not provide the detail required to allege an IDCSA claim. Put another way, Keystone argues the IDCSA claim is simply a restated warranty claim, and "[a] breach of warranty alone isn't enough to

constitute a deceptive act." *Litsinger v. Forest River, Inc.*, 536 F.Supp.3d 334, 360 (N.D. Ind. 2021). That said, a misrepresentation about a warranty can form part of the basis of an IDCSA claim. Indeed, one of the IDCSA's enumerated deceptive acts concerns misrepresentations about a warranty. *See* Ind. Code § 24–5–0.5–3(b)(8). But "a statement of opinion or mere puffing about a product will not serve as a representation of fact that could be deceptive under the IDCSA." *Litsinger*, 536 F.Supp.3d at 361 (citing *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332-33 (Ind. 2013)). The Indiana Supreme Court has described puffery as "empty superlatives on which no reasonable person would rely" or "meaningless sales patter." *Kesling*, 997 N.E.2d at 333 (quoting *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999)).

In their Amended Complaint, the Tillers incorporate by reference the allegations in their similar, now dismissed, VCPA claim. [DE 13 at ¶¶202, 207.] Many of the allegations the Tillers state in support of their IDCSA claim are "mine-run breach of warranty" allegations. *Litsinger*, 536 F.Supp.3d at 361. These allegations include: "[f]ailing to remedy defects . . . within a reasonable amount of time", "[f]ailing to remedy defects . . . within a reasonable number of attempts", and "[f]ailing to make replacement of warranted defective parts available to a consumer within a reasonable time[.]" [*Id.* at ¶¶190g, h, t.] This alone would not be enough to state a claim. *See Litsinger*, 536 F.Supp.3d at 361.

But those aren't the only allegations hurled by the Tillers. They also allege, for example, that the delays in repairing their RV were the result of an intentional scheme

by Keystone to unreasonably constrain the time for which it will reimburse dealers for warranty repairs. [DE 13 at ¶23.] According to the Tillers, Keystone's pre-sale representations concerning the limited warranties and warranty repairs hid this scheme from purchasers such as themselves. Moreover, the Tillers say Keystone intentionally stalled repairs to toll the warranty period, knowingly misrepresented the status and estimated completion of repairs, and falsely claimed repairs had been completed. [*Id.* at ¶¶190j, k, q.] These allegations of deceptive conduct and pre-sale misrepresentations of the limited warranties are of a different nature than allegations of mere delays in repairs or broken parts.

In sum, while it is a close call, I believe the Tillers have said enough to tip the analysis in their favor and allow this claim to proceed to discovery. The proof, of course, will be in the pudding. If the evidence adduced in discovery fails to support the allegations in the Amended Complaint, the Court can return to this claim on summary judgment, if appropriate.

### III.    Fraud and Civil Conspiracy Claim

In Count V of their Amended Complaint, the Tillers bring a claim for fraud and civil conspiracy to defraud. In their response, the Tillers acknowledge that Indiana law governs this claim. They also appear to concede that "civil conspiracy is not an independent cause of action" under Indiana law. *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008).

To state a claim for common law fraud in Indiana (also known as "actual fraud"), the Tillers must plead the following elements: "(i) material misrepresentation of past

11

or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996)). A claim for actual fraud is subject to Rule 9(b)'s heightened pleading standard, which requires a plaintiff to describe with particularity the "who, what, when, where, and how" of the fraud. *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021) (citation omitted). That said, courts must not take an "overly rigid view of the formulation", and the particularity required will depend on the facts of the case. *Id.* (citation omitted).

The Tillers' Amended Complaint fails to state a claim for actual fraud under Indiana law. For starters, the Court fails to see how the Tillers' allegations concerning Keystone's representations of its warranty repair process concern *past* or *existing* facts. *See, e.g., Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 566 (7th Cir. 2020) (citing *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992)). In their Amended Complaint, the Tillers allege that Keystone represented that the warranty offered "comprehensive coverage" and "valuable protection." [DE 13 at ¶¶7–8.] But these are plainly statements of opinion. Likewise, Keystone's representations of "a commitment to address specific issues *if they arise* within the first year of ownership" and that the warranties would "ensure a smooth and efficient resolution to any problems *that may occur*", [*id.* at ¶¶8–9] (emphasis added), are promises of future action. The same is true of Keystone's promise to make "timely repair[s]." [*Id.* at ¶213.]

12

The Indiana Court of Appeals in *Whiteco Properties, Inc. v. Thielbar* gave a helpful example of past or existing fact which constitutes actionable fraud. 467 N.E.2d 433 (Ind. Ct. App. 1984). There, the seller sold lakefront properties to several buyers with the representation that "although a small, low lying cabana would be built, it would not impair their view of the lake." *Id*. at 435. The buyers paid $10,000 more for these units. *Id.* However, Whiteco already knew the size, shape, and placement of the cabana structure would obstruct the view of lakefront properties prior to entering discussions with buyers. *Id*. at 436. Thus, it was held that the misrepresentation was about an existing fact.

By contrast, the allegations highlighted above made by the Tillers in their Amended Complaint appear to be representations about future conduct. And claims of "[a]ctual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *Am. Heritage Banco, Inc.*, 879 N.E.2d at 1115.

There is another problem with the common law fraud claim: the Tillers' allegations of material misstatements fall short of the specificity required by Rule 9(b). In generic, broad terms, the Tillers' allegations primarily concern Keystone marketing materials best categorized as puffery. [*See* DE 13 at ¶¶7–13.] These allegations do not shed light on the "who, what, when, where, and how" of the alleged fraud. *Molina Healthcare of Ill., Inc.*, 17 F.4th at 739. The Tillers' analogy to *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019) is unpersuasive. In that case, the plaintiff alleged the defendant engaged in deceptive packaging of empty space in

13

certain chocolate boxes to mislead consumers as to the quantity of chocolate inside. *Id.* at 644. But the complaint there contained allegations that compared the percentage of unused space in different sized chocolate boxes. *Id*. The Tillers' Amended Complaint contains no such specificity concerning Keystone's alleged fraudulent scheme.

## Conclusion

For the aforementioned reasons, Keystone RV Company's Partial Motion to Dismiss [DE 16] is **GRANTED IN PART AND DENIED IN PART.**

(1) Count III (VCPA claim) is DISMISSED WITH PREJUDICE;

(2) Count V (civil conspiracy and common law fraud claim) is DISMISSED WITHOUT PREJUDICE; and

(3) Counts I, II, and IV remain pending.

**SO ORDERED.**

ENTERED: January 29, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT